# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE BOZZIO, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> EMI GROUP LIMITED, *ET AL.* <br><br> Defendants. | Case No.: 12-cv-2421 YGR <br><br> **ORDER GRANTING MOTION TO DISMISS** |

Plaintiff Dale Bozzio ("Plaintiff" or "Bozzio") brings the instant action in diversity asserting claims for breach of contract, declaratory judgment, open book account, breach of the implied covenant of good faith and fair dealing, and unfair competition in violation of California Business & Professions Code § 17200, against defendants EMI Group Limited, Capitol Records, LLC, EMI Music North America, LLC, EMI Recorded Music and EMI Marketing ("Defendants"). Plaintiff's claims arise out of a 1982 recording agreement and 1983 loan-out agreement with Capitol Records, Inc. Plaintiff filed her First Amended Complaint on July 23, 2012.

The parties are before the Court on Defendants' motion to dismiss the First Amended Class Action Complaint ("FAC") for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties briefed the matter, which was originally set for hearing on August 28, 2012, and the Court continued the hearing to October 2, 2012, with a request for supplemental

briefing. The Court heard oral argument on October 2, 2012. The parties thereafter submitted additional supplemental briefing as requested by the Court at the hearing.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby Orders that the Motion to Dismiss is **GRANTED** on the grounds that the loan-out company's incapacity to sue precludes a claim by Bozzio.

I.   **SUMMARY OF ALLEGATIONS**

Plaintiff's claims all arise from allegations that Defendants failed to pay proper royalties under recording agreements she and her band members entered into with Defendants. (FAC at ¶¶ 2-3.) In 1982, Bozzio and the other members of the band Missing Persons entered into a recording agreement (the "Original Agreement") with Capitol Records, Inc., predecessor in interest to Defendant Capitol Records, LLC ("Capitol"). (*See* FAC ¶ 44, Exh. A.) In 1983, Bozzio and the other members of the group formed a corporation, Missing Persons, Inc., to serve as the loan-out company through which they provided their creative services to Capitol. (FAC ¶ 22.) Bozzio served as the president of Missing Persons, Inc. (FAC ¶23.) On June 6, 1983, the parties agreed to amend the Original Agreement through a subsequent "Loan-Out Agreement." The Loan-Out Agreement is between Capitol and Missing Persons, Inc., and substituted Missing Persons, Inc. as the contracting party in place of the individual band members. (FAC, Exh. B, p. 3, ¶ 7, 49.) Every amendment to the Agreement after June 6, 1983 was signed by Missing Persons, Inc. rather than the individual band members. (*See* FAC, Ex. C.) Plaintiff alleges that the band broke up in 1986 and the loan-out company became a suspended corporation as of July 1, 1988. (FAC ¶ 22.)

Plaintiff alleges that under the recording agreement, Defendants were required to pay: (*i*) a certain royalty for physical products sold based upon masters of recordings created by Plaintiff; (*ii*) a higher royalty for master recordings licensed to third parties. (*Id.* ¶¶ 55-59.) Plaintiff alleges that Capitol improperly treated certain sales of the group's recordings – through music download services, mobile phone mastertone downloads, and licensing to Music Streaming Services – as a record sale and paid the lower record sale royalty rate. (*Id.* ¶¶ 32-43.) Plaintiff contends that Capitol should have treated such sales differently for royalty purposes because Capitol "licenses" masters to digital content providers. (*Id.* ¶ 146.) Plaintiff alleges that, as a result, she and others similarly

situated are entitled to a higher royalty rate for "licenses" under their recording agreements, rather than the lower royalty rate that applies when Capitol sells recordings in physical format.

## II.  STANDARDS APPLICABLE TO THE MOTION

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is generally limited to the contents of the complaint. *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir. 1995). All allegations of material fact are taken as true. *Erickson v. Pardus,* 551 U.S. 89, 93, 94 (2007). However, legally conclusory statements not supported by actual factual allegations need not be accepted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Thus, a motion to dismiss will be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See id.* at 558-59.

## III.  DISCUSSION

Defendants move to dismiss on several grounds. Chiefly, Defendants contend that all claims are precluded because Bozzio is prevented by the terms of the subject agreements from asserting claims for royalties against Capitol directly, but instead is required to "look solely to" her loan-out company for payment. Thus, Defendants argue that, despite Bozzio's allegations that she is a third party beneficiary and has a right to pursue the claims, the contractual provisions mean that she has no third-party beneficiary standing.

The Court sought additional briefing from the parties in light of arguments raised in the related cases concerning the effect of California Revenue and Taxation Code section 23301 ("Section 23301"). Section 23301 provides that a suspended corporation is precluded from exercising the rights of a corporation in good standing, and therefore has no capacity to sue. Cal. Rev. & Tax Code § 23301; *see also, e.g., Reed v. Norman*, 48 Cal. 2d 338, 343 (1957) (a "corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes."). Bozzio alleges that the band broke up in 1986 and the loan-out company became a suspended corporation as of July 1, 1988.

(FAC ¶ 22.)  Thus, the Court inquired whether Bozzio could proceed directly against Defendants given the suspended status of the loan-out corporation that is the party to the contract.

Having considered the supplemental briefing and arguments of the parties, and based upon the Court's reading of the policies underlying Section 23301, the Court finds that, regardless of Bozzio's standing to bring claims as a third party beneficiary, she cannot sue to enforce that agreement when the contracting corporation would have no capacity to do so.  *See Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, 136 Cal. App. 4th 212, 218 (2006) ("*Kaufman & Broad*"); *see also Amesco Exports, Inc. v. Munisoglu,* 977 F.Supp. 1014, 1015 (C.D. Cal. 1997), *order vacated on other grounds*, 87 F. Supp. 2d 1013 (C.D. Cal. 1997) (allowing individual to sue on written contract as to which he is not a party as a third party beneficiary would create a mechanism for avoiding obligations of corporate form, including bar on litigation by suspended corporation).  The California Court of Appeal in *Kaufman & Broad* noted that the policy underlying Section 23301's suspension of a corporation's powers, including the power to sue or defend a lawsuit, was to induce the corporation to pay its taxes and maintain its good standing. *Kaufman & Broad,* 136 Cal.App.4th at 218.  As the California Supreme Court has held, once the purpose of pressuring the delinquent corporation to pay its taxes has been satisfied, "[t]here is little purpose in imposing additional penalties."  *Peacock Hill Assn. v. Peacock Lagoon Constr. Co.*, 8 Cal.3d 369, 371 (1972).  Thus, for instance, the suspended status of a corporation under Section 23301 does not result dissolution of the corporation, piercing of the corporate veil to reach shareholders, or automatically voiding agreements as to which the suspended corporation is a party. *See United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 776-77 (9th Cir. 1977) (corporate veil not pierced); *Gardiner Solder Co. v. Supalloy Corp., Inc.*, 232 Cal. App. 3d 1537, 1543-44 (1991) (corporation that voided agreement with suspended corporation per Section 23301 and 23305a was required to make restitution after revivor of the corporation).  At the same time, the California Legislature clearly meant to foreclose attempts to avoid the consequences of a corporate suspension while it was still in effect.  As the court noted in *Kaufman & Broad*, Section 19719 of the Revenue and Taxation Code made it an offense punishable by fine or imprisonment for a person to

4

attempt to exercise the rights and privileges of a corporation suspended under Section 23301. *Kaufman & Broad,* 136 Cal. App. 4th 218.[1]

Were Bozzio to proceed on her own behalf without regard to the suspended status, she would be using the corporate entity to contract, and gain the benefits of the corporate form, yet would retain the right to sue as an individual, third party beneficiary even when the corporation could not, on account of its failure to comply its corporate obligations, including its tax liability.

In connection with a prior order in the related *Beltran* matter, the Court cited to *Performance Plastering v. Richmond American Homes of California, Inc.,* 153 Cal. App.4th 659 (2007), which held that a third party beneficiary of a settlement agreement could sue to enforce that settlement agreement even when the corporate party to the contract was suspended and unable to sue under Section 23301. Bozzio now relies on this case as well. However, upon further briefing, the Court finds that the situation in *Performance Plastering* is distinguishable from the circumstances here. *Performance Plastering* involved two sets of settlement agreements, one of which was between a homebuilder (Richmond) and one of its subcontractors, a suspended corporation (Performance Plastering) (the "El Nino Settlement Agreements"). The El Nino Settlement Agreements released "Performance Plastering ***and its insurers***" from claims related to a construction project. *Id.* at 662 (emphasis added). Later, the insurer sought to enforce the agreement, and the homebuilder opposed on the grounds that the corporation was suspended and the contract, therefore, voidable. The court reasoned that the suspended status of Performance Plastering did not invalidate the settlement agreement, but merely made it voidable, at the election of Richmond, should it choose to bring suit to declare the agreements void and return the money paid by Performance Plastering. *Id.* at 668-69. The insurer was an express third party beneficiary of the settlement agreement and, notwithstanding the voidability of the agreements as between Richmond and Performance Plastering, had its own right to enforce the agreement. *Id.* at 669. Consistent with that court's earlier holding in *Kaufman &*

---

[1] Only later was Section 19719 amended to preclude such punishment where an insurer acted to defend a suspended corporation in a civil action. However, the court found that the exemption from penal sanctions did not create any right in an insurance company to sue or defend on behalf of the insured. *Kaufman & Broad,* 136 Cal.App.4th at 220-21.

1  *Broad,* the insurer was acting to protect its own rights rather than the rights of the suspended
2  corporation itself.  *Id.*; *cf. Kaufman & Broad,* 136 Cal. App. 4th at 218.

3  More importantly, and unlike Plaintiff here, the insurer in *Performance Plastering* was not
4  closely related to the corporation and was not in a position to revive the corporation and pursue its
5  legal rights.  Under those circumstances, denying the insurance company the right to proceed as a
6  third party beneficiary on account of Section 23301 would deny it a remedy for breach of an
7  agreement expressly made for its benefit, while doing nothing to effectuate the intent of the Revenue
8  and Taxation Code to compel the corporation to pay taxes.[2]

9  By contrast, in this case Bozzio is directly, though not necessarily entirely, responsible for the
10 suspended status of the corporation.  While the loan-out corporation here is not in Bozzio's sole
11 control, she has alleged that she is its president and the "driving force" behind it.  (FAC ¶¶ 22, 23.)
12 Presumably, she could take action to revive the corporation.  Moreover, whether Bozzio could revive
13 the corporation on her own does not present a question of fact barring dismissal, as she contends.  To
14 the contrary, the corporation's, and thus Bozzio's, lack of capacity to pursue the claims appears from
15 the face of the complaint.

16 Bozzio transferred all her rights (and responsibilities) under the recording contract to the
17 loan-out company.  Allowing Bozzio to pursue claims for payment on that contract when the loan-
18 out company is barred from doing so would be contrary to the purposes of Section 23301.

19 In short, Bozzio cannot be permitted to use the corporate form when it is convenient, but
20 ignore the corporate form when it is not.  *See Amesco Exports, Inc.,* 977 F. Supp. at 1016. (finding
21 suit by individual officer and shareholder improper because allowing an "individual to sue on a

---

24 [2] Bozzio's representation in her supplemental brief that a district court "held" that a third party beneficiary had standing "in the context of a suspended loan-out corporation" does not accurately represent that court's decision, as the issue of incapacity due to Section 23301 was not raised there.  *Clinton v. Universal Music Group, Inc.,* CV 07-672 PSG (July 26, 2007) [In Chambers Order Granting Defendants Amended Request for Judicial Notice and Denying Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted] (taking judicial notice of suspended status of corporation, but not addressing impact of that status on plaintiff's capacity to sue as a third party beneficiary of the agreement between record company and suspended loan-out company).

6

contract signed only by the corporation would be to allow that person the benefits of a corporation without the limitations.")

Because the Section 23301 issue is dispositive, the Court does not reach the other arguments raised.

## CONCLUSION

Based upon the foregoing, the motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND**. The First Amended Complaint is **DISMISSED**.

**IT IS SO ORDERED.**

**Date: March 11, 2013**

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**